IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STATE STREET CAPITAL REALTY LLC, | Case No. 2:15-cv-2988 |
| Plaintiff, | Judge James L. Graham |
| v. | Magistrate Judge King |
| P & P REAL ESTATE LLC | |
| Defendant. | |

## Opinion and Order

Plaintiff, claiming Defendant owed it about $175,000 in commission, sued for breach of a real estate listing agreement. Defendant moves to dismiss the claim. (Doc. 5). Defendant, P & P Real Estate LLC ("P & P"), argues that Plaintiff, State Street Capital Realty LLC ("State Street"), failed to allege important facts in its complaint and has therefore failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P 12(b)(6). For the reasons that follow, the motion is granted.

### I.  Factual Allegations

P & P owned two parcels of property and hired a real estate broker—State Street—to sell them. The parties signed an "Exclusive Listing Agreement" (the "Agreement"), in which P & P agreed to pay State Street a 5–6% commission if a parcel was sold[1] during the 180-day exclusive listing period. P & P further agreed to refer all inquiries to State Street and that all negotiations

---

[1] The Agreement states the "commission for any sale of the Property shall by 6% (if there is a co-broker involved in the sale) or 5% (if no co-brokers are involved in the sale)." (Pl.'s Ex. A, Exclusive Listing Agreement at § 2, doc. 1-1). This sale-commission provision is technically a clause in a sentence that begins with, "The commission for all leases shall be as follows." "[W]ith a view to ascertaining the intention of the parties and to give it effect accordingly," *Hope Acad. Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St. 3d 29, 2015-Ohio-3716, ___ N.E.3d ___, ¶ 35 (quoting *S & M Constructors, Inc. v. Columbus*, 70 Ohio St. 2d 69, 71, 434 N.E.2d 1349 (1982)) (internal quotation marks omitted), the Court will interpret the Agreement to provide for both lease and sale commissions.

would be conducted through State Street. (Agreement at § 9). P & P sold a parcel within the 180-day exclusive listing period and refused to pay State Street's commission. (Compl. at ¶ 5, doc. 1-1). State Street claims it is owed $178,502.19 plus interest. (Compl. at 3).

The commission "shall only be earned for services rendered if, during the Term" any of five conditions are met, including "any contract for the . . . sale of the Property is entered into by Owner and the . . . sale actually commences." (Agreement at § 5). P & P sold a parcel during the exclusive listing period, (Compl. at ¶ 5), but State Street does not allege that it rendered any services before P & P sold the property. (*See* Compl. at ¶¶ 1–8).

## II. Discussion

P & P argues that it owes State Street no commission on the sale because State Street fails to allege it was the "procuring cause" of the sale, an allegation P & P argues is required by the Agreement under Ohio law. State Street argues it need not allege that it was the procuring cause of the sale because the Agreement is an exclusive listing agreement and under Ohio law, it is entitled to commission regardless of who procured the sale. P & P also argues that State Street failed to plead that it rendered any services—a prerequisite for payment of commission per the Agreement.

### A. Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal*, 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007); *Twombly*, 550 U.S. at 555–56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancement[s]"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555–56. Analyzing whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

3

'show[n]'– 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

"[W]hen deciding a motion to dismiss a court may consider only matters properly a part of the complaint or pleadings." *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Agreement is an exhibit to the complaint; therefore, it is a part of the pleadings, and the Court may consider it.

### B. State Street does not need to allege that it was the procuring cause of the sale

The parties dispute whether an Ohio common law doctrine, the "procuring cause" doctrine, controls the outcome of this case. It does not.

P & P argues that the Court should dismiss State Street's claim because in its Complaint it failed to allege that it was the "procuring cause" of the sale of the property. (Def.'s Mot. to Dismiss at 4, doc. 5). P & P argues that "a broker must be the procuring cause of a sale or transaction in order to be entitled commission." *Vincent v. Weber*, 232 N.E.2d 671, 675, 13 Ohio Misc. 280 (Mun. 1965) (worryingly stating that "it is difficult, if not impossible, to reconcile the expressions of the Courts in the various cases involving the commissions of real estate brokers, and it would be a profitless task to review even a limited number"); *see also Dohner v. Bailey*, 20 Ohio App. 3d 181, 183, 485 N.E.2d 727, 730 (1984) (discussing exclusive-agency contracts[2]: "a broker's entitlement to a real estate commission depends on whether or not said broker was the procuring cause of the sale."). But to the extent the procuring-cause doctrine exists, it does not apply:

---

[2] An exclusive-agency contract means that the seller agrees to hire no other brokers to procure a buyer, but it does not prevent the seller from acting, in its capacity as the principal, to sell the property on its own. *See Dohner*, 20 Ohio App. 3d at 183.

> [W]here the agreement grants the exclusive right to sell, coupled with a promise to pay a commission in the event a sale is made, the owner may not sell to any person during the life of the agreement, whether produced by the agent or not, without incurring liability to the agent for the payment of the commission stated in the agreement.

*Bell v. Dimmerling*, 149 Ohio St. 165, 169, 78 N.E.2d 49, 51 (1948). An exclusive-right-to-sell contract is truly exclusive, "even to the exclusion of the seller himself." *Dohner*, 20 Ohio App. 3d at 183. "Thus, should the property be sold during the term of the agency, the broker would be entitled to his commission regardless of whether or not he was the procuring cause of the sale." *Id.* This rule is less a matter of common law than a matter of contract language: if the contract triggers the payment of commission on any sale, regardless of who causes the sale, the Court will enforce the parties' contract.

  Here, a threshold question is whether the complaint contains allegations supporting a plausible inference that the Exclusive Listing Agreement is an exclusive-right-to-sell contract. State Street alleges it had the exclusive right to sell the property per the Agreement, and the Agreement generally adheres to the terms of an exclusive-right-to-sell contract. (Compl. at ¶ 3; Agreement at §§ 1, 5, 9). This includes an exclusive listing period, (Agreement at §1), and a payment trigger even if the owner sells the property. (Agreement at §5). The Agreement seems to "grant[] the exclusive right to sell, coupled with a promise to pay a commission in the event a sale is made." *Bell*, 149 Ohio St. at 169. State Street does not need to allege that it was the procuring cause of the sale because the Agreement states that the commission is earned even if the owner, in this case P & P, sells the property. Generally, the Agreement appears to be an exclusive-right-to-sell contract.

5

## C. State Street fails to allege it rendered any services

One part of the Agreement complicates this issue: the Agreement states that commission "shall only be earned for services rendered." (Def.'s Mot. to Dismiss at 4). The Agreement does not define the phrase, "services rendered." P & P would read the phrase "for services rendered" to be a condition of payment of the commission, but provides no legal authority in support of its position. Unfortunately, State Street completely ignores the phrase in its response, excising it when quoting the section in which it is located. (Pl.'s Resp. in Opp'n at 4, doc. 7) ("The Exclusive Listing Agreement provides in relevant part, that the commission shall be earned [for services rendered] if, during the Term"). The phrase appears in many brokerage contracts, frequently without much attention. *See, e.g.*, *Dean A. Smith Sales, Inc. v. Metal Sys., Inc.*, 397 S.W.3d 305, 307 (Tex. App. 2013) ("for services rendered" phrase in exclusive-right-to-sell contract went unanalyzed); *Hammel v. Ruby*, 139 Ill. App. 3d 241, 243, 487 N.E.2d 409, 411 (Ill. App. Ct. 1985) (same); *Barrett v. Duzan*, 559 P.2d 693, 695 (Ariz. Ct. App. 1976) (same). "For services rendered" appears to be a relic in brokerage agreements, dating back to a time when people settled disputes with cigars and "call[ed] it square" but still tried to avoid paying their real estate brokers. *See Metcalfe v. Kent*, 73 N.W. 1037, 1038 (Iowa 1898) ("Smith gave him the exclusive sale of the property for three months, and agreed to pay a commission 'for his services rendered in selling,' etc."). Perhaps the phrase has long gone unnoticed because of the relative infrequency of cases like this: where the broker fails to allege it did *anything* to try and sell the property.

"The construction of a written contract is a matter of law . . . ." *Saunders v. Mortensen*, 101 Ohio St. 3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. Courts' "primary role is to ascertain and give effect to the intent of the parties." *Id.* "[T]he intent of the parties is presumed to reside in the language they chose to use in their agreement." *Hope Acad. Broadway Campus v. White Hat*

*Mgt., L.L.C.*, 145 Ohio St. 3d 29, 2015-Ohio-3716, ___ N.E.2d ___, ¶ 35 (quoting *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 313, 667 N.E.2d 949 (1996)). "Common words in a contract are given their plain and ordinary meaning, unless another meaning is clearly evident from the face or overall content of the contract, or unless the result is manifestly absurd." *Id.* at ¶ 36. "[N]o provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St. 3d 163, 167, 462 N.E.2d 403 (1984).

A plaintiff pleads a breach-of-contract claim by stating (1) the existence of a contract, which requires an offer, acceptance, and consideration; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *Kirkland v. St. Elizabeth Hosp. Med. Ctr.*, 34 F. App'x 174, 178 (6th Cir. 2002) (quoting *Nilavar v. Osborn*, 127 Ohio App. 3d 1, 11, 711 N.E.2d 726, 732 (1998)).

Here, in the Agreement, the "for services rendered" language precedes the list of conditions triggering payment:

> This commission shall only be earned for services rendered if, during the Term: (a) the Property is leased to a person/entity procured by Broker, Owner, or anyone else; (b) a person/entity is procured, by Broker, Owner, or anyone else who is ready, willing and able to lease or purchase the Property on terms agreeable to Owner in its sole discretion; (c) any contract for the lease or sale of the Property is entered into by Owner and the lease or sale actually commences . . . .

(Agreement at § 5). The question here is whether State Street needed to plead its compliance with the phrase, that is, to plead that it rendered services.

"For services rendered" is best understood as a general description of the seller's performance. It does not define how much commission is paid, what triggers its payment, or when it is paid—those items are dealt with separately in the Agreement. (*See* Agreement at § 2 (percentage-based commission), § 5 (commission triggers), § 7 (when commissions are earned). The

7

Court will not, unless no other reasonable construction is possible, construe "for services rendered" to duplicate or contradict other sections of the Agreement. *See Karabin*, 10 Ohio St. 3d at 167. The "services rendered" are those rendered by State Street. The "services rendered" does not act as a limit on commission, nor does its occurrence trigger commission: commission is 5–6% of a sale, earned upon closing, whether the buyer is procured by the broker or the seller. The troublesome phrase is, therefore, a general description of the performance required by the Plaintiff.

Here, all the elements of a breach-of-contract claim are properly pleaded except for Plaintiff's performance. State Street *argues*, but failed to allege, even generally, that it rendered any services, or, put another way, performed under the contract. (Pl.'s Resp. in Opp'n at 2) (arguing it "made extensive efforts to sell and/or lease Parcel 1."). Since it failed to allege it rendered any services, it failed to allege an element of a breach-of-contract claim. *See Iqbal*, 556 U.S. at 678. Since State Street failed to properly plead a breach-of-contract claim, it does not present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### III. Conclusion

Therefore, defendant P & P's Motion to Dismiss is **GRANTED**. (Doc. 5). However, State Street's request to amend its complaint is **GRANTED**. State Street is directed to file an amended complaint within 14 days of this order.

IT IS SO ORDERED.

s/ James L. Graham<br>
JAMES L. GRAHAM<br>
United States District Judge

DATE: March 25, 2016